Good morning. As the Court is aware, a divided panel of this Court issued a decision in United States v. Raynard last month. With one small exception, this case presents a subset of the issues raised in Raynard, and that does not necessarily bode well for Mr. Chung today. Because the Court is familiar with these issues, and we believe that discussion of them today may aid the Court members in assessing a potential on-bank vote which may be coming within the next month, we'd like to discuss two issues of that opinion. First, we want to discuss broadly Congress's authority to enact the DNA Act. That was the subject of dissent between Judge Pragerson and the majority. We'd also like to discuss briefly the Raynard Court's change to the Supreme Court's Lansgraf-St. Cyr test, which they made from a binary test of if there's a retroactive effect, it bars the statute from being applied to the litigant, to a balancing test where the Court finds the effect is minimal and may be disregarded. Beginning with the congressional authority, the Raynard panel split over congressional Article I to allow Congress to enact the DNA Act. The majority reasoned that because the Congress is authorized to criminalize robbery of an FDIC bank, it is authorized to establish the penalties and supervise release for such a crime. Now there's two problems with this that we see. One, there's a tension between that basis to uphold congressional authority and the Court's finding immediately prior to that, that this statute does not violate the ex post facto clause because Congress intended it to be a civil regulatory scheme. If the Act is necessary and proper to the enforcement of the criminal laws, then that cannot jive with the ex post facto analysis. Kennedy. Well, Congress set up the health clinic in the prison? Yes, it may. Under what power? I think that's under the power of honoring a defendant's rights to be free from cruel and unusual punishment. Ensuring the health and safety of an inmate would be something an incarcerated person would have a right to under the Eighth Amendment, and that would be the grant of congressional authority or the provision which would allow them to do that. What I'm getting at kind of is that there may be all kinds of administrative things that go on in a prison that Congress may have to provide for that wouldn't be punishment but might be kind of understood as being adjacent to its power to criminalize conduct. Well, I would be concerned about that. I think I would want to look at anything that as where the power is coming from. I think that dovetails with the government. I don't understand your argument that there's a source of power under the Eighth Amendment. The Eighth Amendment grants rights, but it doesn't give Congress any power, does it? Well, Congress has to enforce those rights and guarantee them. I think if Congress said we're not going to have health care in prisons, I think that would be unconstitutional. And the unconstitutionality of that decision would be based on the decision not to provide health care in prison. I don't think it's a decision they're making to do. I think it's an obligation that's thrust upon them. Well, Congress can do it many different ways. I mean, I suppose the Eighth Amendment gets violated by denial of medical care, and you don't know who's denying it. The prison authorities, whoever's got custody, I suppose, is the one who's set up a clinic necessarily in the prison as long as you give the care. Some of the constitutional amendments, like the 14th, provide that Congress shall have the power to enforce this article by appropriate legislation. But I think maybe Judge Thomas is getting at the point that the Eighth doesn't have that. Okay. Well, I think part of it I would actually say I think the government helps us out here. And we look at page 32 of their answering brief. They cite authority from this Court that's almost 65 years old, which describes the power of Congress to fashion penalties in the criminal law context. And here's the quote from the Ninth Circuit. The scope of the legislative body's power may be expressed as follows. Quote, subject only to constitutional limitations, such as those prohibiting cruel unusual punishment, excessive fines, the enactment of ex post facto laws, the imposition of double jeopardy, and those guaranteeing equal protection of the laws, due process law, et cetera, the legislator may fix the punishment for the crimes it sees fit. Its power is practically unlimited. It may take property, liberty, or life in punishment for an infraction of the law so long as it does not in so doing infringe or violate any of the guarantees secured by all citizens by the Constitution. I take that the Court's statement in there is the general statement that Congress can act as long as it has some basis within the Constitution to act. It's limited by the Constitution. So even the DNA Act is subject to the Eighth Amendment prohibitions, the Fifth Amendment prohibitions. It's also subject to the Commerce Clause limitations. The Necessary and Proper Clause in and of itself does not give authority for Congress to act. That has to be derived somewhere else. The — for the DNA Act, for the crime of robbing a federally insured bank, it is the Commerce Clause. Likewise, the DNA Act must find some basis in the Constitution to permit Congress to act. Now, obviously, we can't overrule Renard. And you're not asking us to do that. And no, I should not. It seems to me that the distincting — the one issue that's not present in Renard that's in here is the Rule 11 colloquy. Do you want to address that? The Littlejohn issue troubles me. I don't — the problem with Littlejohn is under Littlejohn, Mr. Chung was entitled to be advised of the consequences of the DNA Act at the time of — he entered his plea to make it determined free and voluntary. But I'm concerned that if the Court makes that finding, what is the remedy? The remedy under Littlejohn is to allow him to withdraw his plea and return to the district court. Mr. Chung doesn't ask for that relief. So I'm not sure how advancing that argument would assist Mr. Chung in this matter. Yeah. So if you're not asking for him to withdraw the plea, then actually that argument — you probably want to withdraw that argument. So withdrawn. Yeah. If I might use our time, the couple minutes left, I want to address two more points that may assist the Court when it's considering an en banc vote. One, in the Lopez — the majority and the dissent agreed that the third Lopez factor concerns. In footnote 10 of the Court's opinion, the Court says that no one has asked the Court to address whether Congress can regulate something that it — that it itself puts in commerce. But that's the very issue that's been raised here. And the Court actually answers that question in Lopez itself. As opposed to the Raynard Court, which paraphrased Lopez, the actual words of Lopez in the second category tell — tell us the answer, which is, quote, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, persons or things in interstate commerce, even though the threat may come only from interstate activities. But Congress here is neither regulating nor protecting a thing in interstate commerce through the DNA Act. They are creating something to be introduced into interstate commerce. And that falls outside of Lopez C. The majority and the dissent disagreed upon that, with the majority in footnote 10 saying they're not really reaching the issue, but Lopez disposes of it. Because Congress did not have the authority to enact the DNA Act, it can't be applied to Mr. Chung in this case. The last thing I'd ask the Court to consider when making any on-bank determination in the Raynard case, should it come to that, is the shift in the retroactivity analysis. The three line of cases from the Supreme Court, Sancerre, Landgraf, and Hughes, are very clear that when you get to step two of the presumption against retroactivity, it's not a balancing test. Congress can overcome that presumption by clear intent. Three judges agreed there is no such clear intent in the statute. They then went to the second test, which is you determine if there's retroactive effect. If there is an effect, the law cannot be applied. If there's retroactive effect to the litigant, it cannot be applied to the litigant. The majority recognized that there was a retroactive effect. The disability inflicted upon Mr. Raynard, the same disability inflicted upon Mr. Chung, by having his DNA extracted, his blood drawn, and then added to a national database. Now, the Court said it was minimal because they used junk markers that, as presently known, are not known to give a genetic makeup. Whether that will change in the future and how soon is unknown. But more importantly, the three Supreme Court cases do not permit that kind of discounting. Any retroactive effect requires that it not be applied to the litigant. They recognize the retroactive effect and just change the test. Under those three Supreme Court cases, I don't believe the Court has the authority to do that. And I hope when the Court considers this case on bank, if it does, it will adhere to the Supreme Court precedent. If the Court has no other questions, I'll let you go. Thank you, counsel. Thank you. Good morning, Your Honors. Rod Castor, civil for the United States. I think that the defendant today has essentially conceded everything. In the defendant's 28-J letter, the defendant indicated that Raynard has, in fact, controls this case and has dealt with all of the issues, and the one issue that was potentially left open was the Rule 11 issue. Today, the defendant has conceded and withdrawn that argument. And based on that, there really is no issue left. We may want to wait for Raynard to be final one way or the other before issuing a decision in this case, but it seems to me that Raynard, however it comes out, whether it stands or whether it's reconsidered on bank, will control this case, except for the Rule 11 issue, which has now been withdrawn. I think that that is correct, Your Honor. And based on that, unless the Court has any questions of me, the government would submit. Well, it's one of those things that happens after briefings sometimes. You put a lot of effort into briefs and then events overtake us. We appreciate you coming this morning. Thank you, Your Honor. The case is heard and will be submitted.
judges: Canby, Thomas, Conlon